*N idolf J. Patti*

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

**FILED**

APR 0 1 2019

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY _____, DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

an LG cellular telephone, with serial number
807VTUQ082350
IMEI: 353934090823504

)
)
)
)
)
)

Case No. M-19- 167 -STE

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Western _____ District of _____ Oklahoma _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Sections | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 924(c) | See attached Affidavit |
| 18 U.S.C. § 922(g)(1) | |

The application is based on these facts:
See attached Affidavit of Special Agent Brad Dillahunty, Homeland Security Investigations, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brad Dillahunty, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/1/19

City and state: OKC, OK

_____
*Judge's signature*

SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

## THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Brad Dillahunty, Special Agent (SA) of the United States Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn, depose and state as follows:

1.      I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of and to make arrests for offenses as set forth in 18 U.S.C. § 2516.

2.      I have been employed as a Special Agent with HSI and its predecessor the United States Customs Service since October 2000.  I am currently assigned to the Office of the Resident Agent in Charge, Oklahoma City, Oklahoma (RAC/OC).  As part of my daily duties as an HSI Special Agent, I investigate criminal violations of federal law, including violations of Title 18, United States Code, Section 545, Smuggling Goods into the United States; Title 22, United States Code, Section 922(g)(5), Alien Illegally or Unlawfully in the United States; Title 21, United States Code, Section 952, Importation of Controlled Substances; and Title 21, United States Code, Section 841, Possession with Intent to Distribute a Controlled Substance (collectively, the "Specified Federal Offenses").  Additionally, HSI has a memorandum of understanding with the Bureau of Alcohol, Tobacco, Firearms, and Explosives that allows me to investigate all violations of Title 22, United States Code, Section 922, including 922(g)(1), Felon in Possession of a Firearm.

3.      I have personally participated in this investigation and am familiar with the
information contained in this Affidavit through personal investigation, discussions with
other law enforcement personnel, interviews with witnesses, and review of reports and
other related documentation.

4.      The information contained in this Affidavit is submitted for the limited
purpose of establishing probable cause to secure a search warrant for an LG cellular
telephone with serial number 807VTUQ082350 and International Mobile Equipment
Identity (IMEI): 353934090823504 **(Subject Phone)** as described further in Attachment
A (physical description) for evidence of violations of 21 U.S.C. § 841(a)(1)
(manufacturing, possessing, distributing, and selling of controlled substances); 18 U.S.C.
§ 922(g)(1) (felon in possession of firearm); and 18 U.S.C. § 924(c)(1)(A) (possession of
firearm in furtherance of a drug-trafficking crime).

5.      Since this Affidavit is being submitted for the limited purpose of securing a
search warrant, I have not included each and every fact known to me concerning this
investigation.  Only those facts which are necessary to establish probable cause to search
an LG cellular telephone with serial number 807VTUQ082350 International Mobile
Equipment Identity (IMEI): 353934090823504.

## BACKGROUND REGARDING CELLULAR DEVICES

6.      Based on my knowledge, training, experience, and the experience of other
law enforcement personnel, I know that individuals who purchase and/or distribute
controlled substances utilize cellular telephones to communicate to potential buyers and

2

suppliers to set up meeting locations and times, and to discuss quantities and prices. Similarly, individuals prohibited from possessing firearms will purchase firearms illegally from individuals or trade them for controlled substances. These communications are done via person-to-person telephone calls, text messages, voicemail, mobile applications such as Facebook messenger, Whatsapp, and Snapchat, and other person-to-person communication services that may be used with the telephones data services. I also know that these individuals, if the cellular telephone has the ability, often take photographs of their controlled substances, the proceeds from the sale of controlled substances and of other conspirators/buyers. Likewise, individuals involved with prohibited firearms often send messages that contain photographs of the firearms that are part of the sale or exchange. I also know that it is common, especially for gang members, to take photographs of themselves holding firearms. These photographs are often taken and stored on their mobile devices such as telephones and tablets.

7.     Based on my knowledge, training, experience, and the experience of other law enforcement personnel, I know that the **Subject Phone,** an LG cellular telephone, has the ability to communicate via person-to-person telephone calls, text messages and/or voicemail. I also know that the **Subject Phone** has the capability to access the Internet, thus allowing the user to communicate via email, websites, and mobile applications. I have also observed the **Subject Phone** to have a camera.

## FACTUAL BACKGROUND

8.     Based on the foregoing information, **Jerry James Kendall Ritchie**

3

(**Ritchie**) committed crimes in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 922(g)(1), and 18 U.S.C. § 924(c)(1)(A), and evidence of those crimes will be found on the **Subject Phone**.

9.      On November 13, 2018, **Ritchie** was indicted by the Grand Jury in the Western District of Oklahoma for possession with intent to distribute methamphetamine, being a felon in possession of a firearm, and possession of a firearm in furtherance of a drug-trafficking crime.

10.      On October 19, 2018, at approximately 7:06 p.m., Officer Walter Tuttle, Sgt. Zeke Frazee, and Officer Damian Neiswanger of the Enid Police Department were patrolling the area of 100 S. 12th Street traveling northbound in Enid, Oklahoma. The officers were behind a gold Buick SUV bearing Oklahoma tag number EXA471. The vehicle made a right hand turn into the alley behind 1201 E. Broadway Avenue. Officer Neiswanger observed a white male driver with facial hair wearing a red and black hat in the driver's seat, later identified as **Ritchie**, and a white female in the passenger seat, later identified as Stephanie Benge.

11.      The vehicle then turned around in the alleyway and began to travel westbound. The officers observed that the driver's side headlight was not working properly. The officers pulled up to the vehicle and observed the occupants outside of the vehicle.

12.      As the officers were exiting their vehicle, **Ritchie** ran around the corner and Benge began to walk around the corner. The officers could smell a strong odor of

4

raw marijuana as they approached the vehicle. When the officers got around the corner they observed **Ritchie** running northbound by an apartment complex. Officer Tuttle and Sgt. Frazee yelled, "Stop, police" and began to chase **Ritchie**. Officer Neiswanger stayed with Benge. When Officer Neiswanger asked Benge why **Ritchie** ran, she said she did not know. While Officer Neiswanger was speaking with Benge, he could smell the odor of raw marijuana in the area around Benge and told Benge that he was going to detain her for the time being.

13.     As Officer Tuttle and Sgt. Frazee chased **Ritchie** on foot, **Ritchie** tried to enter an apartment complex. Officer Tuttle recognized **Ritchie** and had received information days earlier that **Ritchie** was in possession of a handgun and always had it with him. Officer Tuttle drew his service weapon and ordered **Ritchie** to show him his hands. **Ritchie** took a step towards Officer Tuttle with his hand in the air and then stated "f*ck you" and put his hand down on his waist area. **Ritchie** refused to comply with Officer Tuttle's commands to put his hands up and get on the ground. Knowing from his training and experience that the waist area is a common area used to carry concealed weapons, Officer Tuttle used a forward kick and struck **Ritchie** in the waist area. Sgt. Frazee then grabbed **Ritchie** by the arm and pulled him to the ground. **Ritchie** was yelling and cursing at the officers as they placed him in handcuffs and informed him he was under arrest for obstruction.

14.     While the officers were trying to search **Ritchie** on the ground, he began trying to roll around to keep the officers from reaching his pockets. When the officers

stood **Ritchie** up, he began trying to run towards Sgt. Frazee and jerk away in an attempt to break free. Sgt. Frazee then pushed **Ritchie** to the ground and tried to get him on his stomach and gain control of him. **Ritchie** began trying to kick Sgt. Frazee. Officer Tuttle was behind **Ritchie** and tried to control his upper body by wrapping his arms around **Ritchie's** upper body. The officers were finally able to get control of **Ritchie**.

15.    K-9 Officer Michelle James then arrived at the officers' location with her K9 partner Kylo Ren (Ren) and Ren conducted a free air sniff around the vehicle. Officer James reported that Ren had positively alerted to the vehicle. Officer James and Officer Tuttle then searched the vehicle and Officer James located a Crown Royal bag under the hood of the vehicle and a handgun directly below the bag. The handgun was a Hi Point, Model CF380, .380 ACP caliber, semi-automatic pistol, bearing serial number P8158496, which had a round in the chamber and six rounds in the magazine. The Crown Royal bag contained a couple of premeasured bags containing a crystalline substance, a sandwich bag filled with a green leafy substance, a syringe, and a digital scale. The white substance was field tested positive for methamphetamine and weighed approximately 13.9 grams. Another digital scale was found inside the vehicle. Additionally, the **Subject Phone** was found in the vehicle. Officer Tuttle subsequently completed a vehicle inventory of the contents of the vehicle.

16.    **Ritchie** informed the officers that the firearm and narcotics were not his and that he was not driving the vehicle. However, when **Ritchie** was searched, the

6

officers found a key to the Buick SUV on his person.

17.     Officer Tyler Evans *Mirandized* Benge and she stated that she understood her rights and would speak with Officer Evans.  She explained that she allows people to drive her car for money and that **Ritchie** had had her car since around 6 p.m. the previous day.  Benge stated that she did not know about the drugs in her car.

18.     I checked **Ritchie's** criminal history and **Ritchie** has been convicted of multiple felonies and thus was precluded from possessing a firearm under 18 U.S.C. § 922(g)(1).

19.     I provided the aforementioned firearm to Special Agent Brenden Taylor. Special Agent Taylor is an interstate firearms nexus expert with ATF.  On October 25, 2018, Special Agent Taylor provided me with is opinion that the aforementioned firearm was not manufactured in the state of Oklahoma, and therefore crossed state lines to reach the state of Oklahoma, thereby affecting interstate commerce.

20.     Oklahoma Department of Corrections records show that **Ritchie** is a known member of the Universal Aryan Brotherhood (UAB).

21.     After the Indictment, the government discovered the following information related to the **Subject Phone**.  During a recent interview with a cooperating witness, the government learned that **Ritchie** had confessed to the witness that **Ritchie** was taking drugs to a third party's house when he was stopped by the Enid Police Department.  This cooperating witness also stated that **Ritchie** told him that he was driving the vehicle and that he put drugs and a gun under the hood in a Crown Royal bag.  Thus, there is

probable cause to believe that the **Subject Phone** may have evidence of this drug trafficking activity.

22.     Additionally, the government recently became aware of a jail call **Ritchie** made when he was at Garfield County Jail shortly after his arrest where he told an acquaintance that he did not think that law enforcement had found his phone and asked her to "grab my phone" from the vehicle.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24.     *Forensic evidence.*     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Phone** was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the **Subject Phone** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or

8

of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26.   *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27.   Based on the above facts, I believe probable cause exists, to search the LG cellular telephone with serial number 807VTUQ082350 and IMEI: 3533934090823504, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**, which constitute evidence, fruits, instrumentalities, and other items

10

related to possession with intent to distribute controlled substances, felon in possession of firearm, and possession of firearm in the furtherance of a drug trafficking crime. Therefore, it is respectfully requested this Court issue a search warrant.

Special Agent Brad Dillahunty
U.S. Department of Homeland Security
Homeland Security Investigations

SUBSCRIBED and SWORN before me this ___1st___ day of April, 2019.

SHON T. ERWIN _____
United States Magistrate Judge
Western District of Oklahoma

11

## **ATTACHMENT A**

Description of LG cellular phone with serial with serial number 807VTUQ082350 and International Mobile Equipment Identity (IMEI): 353934090823504.



## **ATTACHMENT B**

All records on the Device described in Attachment A that relate to violations of Title 18, U.S.C. §§ 922 and 924, and Title 21, U.S.C. § 841 including, but not limited to:

1. Lists of customers and related identifying information;

2. Types, amounts, and prices of controlled substances as well as dates, places, and amounts of specific transactions;

3. Any information related to sources of controlled substances (including names, addresses, phone numbers, emails, notes or any other identifying information);

4. Communications regarding controlled substance offenses;

5. All bank records, checks, credit card bills, account information, and other financial records;

6. Evidence related to the possession, use, storage, or purchase of any vehicles, vessels, or other items that could be used as a means of transporting controlled substances;

7. Evidence, including geolocation records, related to locations used as meeting places, places used to store proceeds, instrumentalities, controlled substances, firearms possessed or used in the furtherance of drug trafficking, or other contraband;

8. Phone call records (incoming, outgoing, missed calls), voicemail, text messages (mms/sms/picture/video/etc.), emails, video chats, direct messaging, encoded messaging, mobile applications, and all other forms of communication that could be utilized to plan and discuss the transportation, packaging, distribution, sale, or concealment of controlled substances or drug proceeds;

9. Evidence of user attribution showing who used or owned the **Subject Phone** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames, passwords, documents, and browsing history;

10. Any digital data or material including video, audio, and still photography, lists, notes, and other text data relating to the distribution of controlled substances or possession of firearms; and

11. Call history, contact name and numbers, voice and text messages, emails, pictures, videos, and/or other electronic data relating to drug activity or possession of firearms.